NAME *ATTachment 1*
DATE

**K. DAVID HIRSCHEY**

5750 Vicksburg Lane • Plymouth, Minnesota 55446-1409 • (763) 559-0080

July 17, 2002

*PRIVILEGED & CONFIDENTIAL*

Mr. John B. Waldron, Esquire
**Waldron Law Offices, LTD.**
1951 Concordia Street
Wayzata, MN 55391-9320

Re: William K. Avery v. Hennepin County, et al.
    Civil Case No. 002171 RHK/SRN

Mr. Waldron:

By way of background, I understand that you are assisting Dr. William K. Avery in a dispute regarding alleged child support debts as well as various collection, credit reporting and resolution efforts by the Defendants. The Defendants, Hennepin County, specifically the activities of the Collection Service Division, are being contested. Hennepin County is a large metropolitan municipality in the state of Minnesota.

Dr. Avery is currently a practicing Dentist, having graduated from the University of Pittsburgh's Dental School in 1987 and is resident of the Washington, D. C. area. Over a 14-year period, Dr. Avery entered into agreements, corresponded with, challenged and was subjected to controversial correspondences and relations with representatives of Hennepin County.

I was asked to review Hennepin County's child support procedures as they relate to the subsequent credit reporting activities regarding Dr. Avery. Additionally, I was to calculate Dr. Avery's economic losses, if any as both a Dentist and the personal financial impact, as a result of the credit reporting actions by Defendants.

In preparation for rendering my initial opinions in this case, I have reviewed copies of several documents, including formal filings, Dr. Avery's correspondences regarding his attempts to address and communicate outstanding issues, credit reports, several tax returns, as well as your responses to my questions. A list of materials I have examined and relied upon is illustrated on the enclosed Attachment "A" or are noted in the footnotes of this Report.

## OPINION

Given the documentation and the facts of the case known to me at this time, my initial opinion is that there are significant inadequacies in many of Hennepin County's practices with respect to Dr. Avery's child support debt complaint and Hennepin County's subsequent credit reporting practices. Hennepin County should have taken other and additional steps to support Dr. Avery, detect and discipline those individuals and employees discriminating or retaliating against Dr. Avery. However, Hennepin County displayed a lack of willingness to do so and exacerbated the situation by its actions.

Hennepin County's inaccurate and negative Credit Report(s) significantly impacted Dr. Avery through the diminishment in his earning capacity – specifically the ability to establish, develop and grow his existing private dental practice as well as negatively impacting his personal financial status.

# WALDRON LAW OFFICES, LTD.

recd.
7-23-02

JOHN B. WALDRON
ATTORNEY AT LAW
1951 CONCORDIA STREET
WAYZATA, MINNESOTA 55391-9320

TELEPHONE (952) 471-0940
FAX (952) 471-8859

email jlw@quixnet.net

July 19, 2002

Charles J. Janus, Esq.
Janus & Rubard
6504 Old Branch Avenue, Suite 206
Temple Hills, MD 20748

Re:    **Avery v. Hennepin County and the State of Minnesota**
       **Civil Case No. 002171 RHK/SRN**

Dear Mr. Janus:

I am enclosing the following documents for your review:

1.    My letter to opposing counsel dated July 18, 2002;
2.    My letter to the Magistrate Judge dated July 18, 2002;
3.    My letter to the Court of this date, together with its noted enclosures, excepting the actual exhibits;
4.    K. David Hirschey's expert opinion letter, with attachments;
5.    My letter to K. David Hirschey of this date; and
6.    My letter to Dr. Avery of today's date.

Very truly yours,

John B. Waldron

Enclosures
cc:    William K. Avery, DDS.

NAME *ATTACHMENT 2*
DATE

**UnitedHealthcare**

A UnitedHealth Group Company



M.D.IPA™    OPTIMUM CHOICE®    MAMSI®    ALLIANCE PPO™

4 Taft Court Rockville MD 20850
www.mamsiUnitedHealthcare.com

April 25, 2006

William Avery, DMD
4244 Benning Rd NE
Washington, DC  20019

CERTIFIED RETURN RECEIPT

Dear Dr. Avery:

Effective immediately, your General Dental Agreement contract with M.D. Individual Practice Association, Inc. signed December 19, 1989 is being terminated.  This action is being taken due to your suspension by the Office of Personnel Management (OPM) prohibiting you from receiving payment from the Federal Employees Health Benefits Program (FEHBP), which is a violation of Section 9 of the Agreement.

If you have any questions, please contact Karen Wampole, Provider Quality Review at (301) 838-4714.

Sincerely,

Robert Brown
Vice President, Professional Services
United Healthcare of the Mid-Atlantic, Inc.

UnitedHealthcare
4 Taft Court
Rockville, MD 20850

*ADDRESS SERVICE REQUESTED*

SUBURBAN PRDC
MD 208
22 JUN 2006 PM 3 L

William Avery, DMD
Attn: Crystal
4244 Benning Rd, NE
Washington, DC 20019

20019+4543

**NAME** *ATTACHMENT 3*
**DATE**

*Rec. 6/23/06*

Retain Federal Benefits • Deferment & Forbearance • Federal Death and Disability Insurance
Federal Subsidies • No Prepayment Penalty

Authorized Program Povider

Class Advantage, LLC.
2445 Morena Blvd., Suite 204
San Diego, CA 92110
www.classadvantage.org

**PLEASE CALL 800-440-8664**
**M-F 7AM - 7PM PACIFIC TIME**

|  | Under your current program, you would pay the following: | With new discounts, you would pay the following: |
|---|---|---|
| Current Balance | $80,474 | |
| Cumulative Payments | $212,577.70 | $152,338.89 |
| Total Interest Paid | $132,103.70 | $71,865.54 |

**This represents a savings of $60,238.81 or 28.34%**
Savings estimate based on standard repayment plan.

**PRESCREEN & OPT-OUT NOTICE:** In accordance with the Fair Credit Reporting Act please be aware of the following: Information contained in your credit report maintained by Equifax was used in connection with the decision to send you this letter. You have received this letter because you have been pre-qualified, in that, the information in your credit report indicated that you satisfy our criteria for credit worthiness used to screen for this offer. Offer is based on Federal Education Loans in non-default status. Minimum loan balance of $20,000 is required. If you do not want to receive pre-screened offers of credit from this and other companies, call Equifax toll free at 1-888-5OPT-OUT: or write to Equifax Options, PO Box 740123, Atlanta, GA 30374-0123

# Form 215-IRF
# INTEREST RATE REDUCTION NOTIFICATION

The U. S. Department of Education has eliminated their single lender policy. This change gives borrowers the ability to refinance their previously consolidated Federal Education Loan.

Information contained in your credit report maintained by Equifax indicates that you are now eligible to refinance your existing high rate consolidation loan.

You qualify to receive **interest rate reductions** and **optional lower monthly payments**.

This is a Free Federal Education Loan Program. Refinancing involves **no fees or credit checks.**

*Rec'd 6/23/06*

Please call the authorized institution below upon receipt of this notice. **Deadline July 1, 2006.**



## Federal Student Loan Notification

CONFIDENTIAL. Registered document enclosed for addressee only. Five years imprisonment, US \$2,000 fine, or both for any person tampering with or obstructing the delivery of this document. US CODE TITLE 18 SEC 1702



Rec'd 6/23/06

PRESORTED
FIRST-CLASS
MAIL
U.S. POSTAGE
PAID
PERMIT NO. 2635

## SECOND NOTICE



|ılıllıllılılllılıılıllılıllılıllılıllılılılılı
6618A-3379

William K. Avery
4244 Benning Rd NE
Washington, DC 20019-4549

**U.S. DEPARTMENT OF JUSTICE**

NCI Debtor Statement

U. S. ATTORNEY OFFICE
555 FOURTH STREET, NW
JUDICIARY CENTER BUILDING
WASHINGTON, DC 20530

*This communication is from the United States Department of Justice. All correspondence on this debt should be sent to the representative of the United States at the address to the left above.*

| | |
|---|---|
| DATE OF STATEMENT | 05-JUN-2006 |
| CLAIM NUMBER | C-58771 |

For inquiries regarding debt call:    202-514-7211

Retain top portion for your records.    This is your official receipt.    Make name/address corrections on the reverse. This statement reflects the balances for this debt only.    You may have additional outstanding debt.    Detach bottom portion, indicate amount enclosed, and return with your payment.

William K. Avery D.M.D.
4244 BENNING ROAD, N.E.
WASHINGTON, DC 20019

| ACCOUNT INFORMATION | | | |
|---|---|---|---|
| Last Payment Received Date | 07-DEC-2005 | Current Balance | $102,335.86 |
| Last Payment Amount | $6,149.49 | Next Payment Amount | $550.00 |
| Annual Interest Rate | 7.500% | Payment Amount Due | $22,450.51 |
| | | Payment Due By | DUE NOW |

**MAKE CHECK OR MONEY ORDER PAYABLE TO U.S. DEPARTMENT OF JUSTICE**
**INCLUDE CLAIM NUMBER ON CHECK OR MONEY ORDER**
Please detach and enclose bottom with payment

DO NOT SEND CASH!

**Payment Options:**
1. **Check or Money Order**
2. **Credit Card**
3. **EZ Pay (Call the number above to learn about our automatic debit program)**

**PAY YOUR DEBT BY CREDIT CARD BY USING THE FORM BELOW**

We accept credit cards




| | |
|---|---|
| PAYMENT AMOUNT DUE | $22,450.51 |
| PAYMENT DUE BY | DUE NOW |

Payment must be received by the PAYMENT DUE BY date, in order for payment to be applied before the next billing cycle.

CARD NO._____
EXPIRATION DATE_____

If payment amount is not indicated, I authorize the Department of Justice to charge my card for the payment amount due.

SIGNATURE_____

| CLAIM NUMBER | C-58771 |
|---|---|
| NAME | William K. Avery D.M.D. |
| AGENCY CODE    HHHP | DISTRICT DC        COA Recov |
| AGENCY FILE NUMBER | HHHP-50084481 |
| PAYMENT AMOUNT | |

ADDRESS CORRECTION (Please Check Box and Place new address on reverse) ☐

MAIL COUPON TO:
U.S. DEPARTMENT OF JUSTICE
NATIONWIDE CENTRAL INTAKE FACILITY
P.O. BOX 70940
CHARLOTTE, NC 28272-0940

AveryC-58771        DC HHHP-50084481        000002245051

**NAME** *Attachment 4*
**DATE**



William K. Avery, D.M.D.

General Dentistry
4244 Benning Road N.E.
Washington, DC  20019

FORWARD ORDER EXPIRED

RETURN TO SENDER

James Show
200 OAK Lk Run
Chesapeake, Virginia

# *William K. Avery, D.M.D.*

General Dentistry
4244 Benning Road, N.E.
Washington, DC 20019
(202) 399-7744





Feb. 20, 1999

Ms. Stacy and James Shaw,

My name is William Avery and I never gave up looking for the couple who attended The University of Pittsburgh Dental School. If you are the correct Stacy Shaw - you were not treated honestly by the recruitment officer at the school. Neither was I. When I graduated. I began my lawsuit with a vengeance enclosed is a copy of the apology that I received from the school.

You are owed the same and more. My attorney has asked me if I had found you for the last two years. I obtained a mailing list and hope that you are the right person. If so, you're going to get that apology and hopefully other benefits that you deserve. I remember that you were very smart and have a degree in Chemistry. Ms. McFadden, I will never call her doctor, is deceased.

I never forgot you and the stress/ debt that was brought to you wrongfully.

Please call collect. I'll do flips in the air if it's actually you. Obviously, you are finding out that I really did care.

We just had no one to help us. 

Bill Avery  ( 202) 399-7744
         (202) 388-1575

NAME
DATE *ATTACHMENT 5*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

William K. Avery,

                    Plaintiff,

        v.

Hennepin County and
the State of Minnesota,

                    Defendants.

PLAINTIFF'S MEMORANDUM
FOR TRIAL AND IN OPPOSITION TO
DEFENDANT'S JOINT MOTION FOR
SUMMARY JUDGMENT

Civil Case No. 002171 RHK/SRN

## INTRODUCTION

Plaintiff William K. Avery brought the above-entitled matter against Defendants Hennepin County ("County") and the State of Minnesota ("State") for negligent and intentional violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. Section 1681 *et seq.*  The basis of Plaintiff's claims in both instances is grossly inaccurate reporting of Plaintiff's alleged child support arrearages to national credit bureaus.  Pursuant to the Court's pre-trial orders in this matter, Plaintiff now submits his combination Trial Memorandum and Memorandum in Opposition to Defendants' Joint Motion for Summary Judgment.

## SIGNIFICANT DISPUTED MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT

The central material facts of this case are (1) whether Plaintiff owed any child support arrearages whatsoever during the time Defendants reported significant arrearages to national credit bureaus, (2) whether the alleged child support arrearages of Plaintiff were, in any event, reported inaccurately by Defendants in any respect, regardless of whether Plaintiff is found to have owed any arrearages, and (3) whether Defendants made an adequate investigation of the alleged child support arrearages due and owing by Plaintiff before doing their reporting to the national credit bureaus.   There are genuine issues as to each of these material facts

which preclude summary judgment in favor of Defendants. At trial, Plaintiff will prove he owed no child support arrearages, that Defendants' reporting of his "arrearages" from time to time were grossly inaccurate, and that Defendants failed to adequately investigate the arrearage issue as required by the FCRA.

First, Defendants claim that "[d]espite the Permanent Support Order and Notice and Order to Withhold [of the Washington, D.C., Court], Plaintiff failed to pay a total of $17,589.67 in child support from May 15, 1990 to May 31, 1993" and that "[t]o date, Plaintiff still has outstanding arrearages totaling $33,866.13". Memorandum in Support of Defendants' Joint Motion for Summary Judgment ("Defs.' Mem."), pp. 3 and 6. Plaintiff submits he owed and owes nothing under the D.C. permanent support order, and documents from the D.C. Court itself establish this. (Affidavit of William K. Avery dated November 11, 2000, on file herein, and paragraphs 1-6, 8 and 9 therein ("First Avery Aff.") and Exhibits A-E, G and H thereto.)

Exhibit B to the First Avery Aff., a memorandum from the D.C. Court to Hennepin County issued on July 20, 1993, showed no arrearages on Plaintiff's account record. Even if, as Defendants claim, the D.C. case was dismissed at that time at the request of Hennepin County, why would the D.C. Court show no arrearages on Plaintiff's account record unless, in fact, there were no arrearages? Also, if, in fact, Plaintiff owed significant arrearages at that time, why did Defendant County fail to proceed with a URESA proceeding in Maryland, the State to which Defendant County knew Plaintiff had moved?

When Defendants continued to ignore the 1993 statement of no arrearages, Plaintiff subsequently filed a motion for a formal, factual determination of the status of any "arrearages" of his under the previous permanent D.C. Order. The result was Exhibit C to the First Avery Aff., the Order dated three years later, on July 5, 1996, finding again *as a matter of fact* that Plaintiff had no arrearages under the D.C. support order. Defendants are

-2-

thus collaterally estopped from challenging this finding. In addition, the Hennepin County District Court has already found that it has no jurisdiction (nor would this Court) to challenge the ruling of the D.C. Court on the issue of Plaintiff's alleged arrearages (*See* Exhibit J to Defendant Hennepin County's Affidavit of Larry Heller dated October 23, 2000, on file herein ("First Heller Aff."), pp. 7-8, paragraphs 43 and 46). Other official communications from the D.C. Court confirm the lack of arrearages as well (*See* Exhibits B, D and E to First Avery Aff.) Plaintiff has never produced cancelled checks for payment of the support under the D.C. order because these records are not available to him. (First Avery Aff., paragraph 8) However, given the documentation from the D.C. Court itself, this is not necessary. Given the above, there is obviously a genuine issue of material fact as to whether Plaintiff owes any arrearages whatsoever, thus precluding summary judgment in favor of Defendants. Indeed, this Court could also rule as a matter of law that the factual finding by the D.C. Court is binding on this Court as to the issue of any arrearages owing under the permanent D.C. Order.

Second, there are genuine issues of material fact as to the accuracy of Defendants' reporting of Plaintiff's alleged child support arrearages. Defendants have reported varying amounts to the national credit bureaus at different times with no logical basis for their numbers. For example, as set forth in Exhibit "D" to the Affidavit of William K. Avery dated July 18, 2002 ("Second Avery Aff."), filed herewith, $35,122.18 was shown as owing on August 23, 2000, and then a lesser amount of $33,774.80 was shown as owing over one and one-half years later, as of May, 2002, even though no payments on the alleged "arrearages" were made by Plaintiff during that time period. Second Avery Aff., paragraph 4. As another example, in a credit report of Plaintiff's dated February 7, 2000, Plaintiff was shown as owing child support for two children, one account showing a balance of $28,376.00, and the other a balance of $28,025.00. Second Avery Aff., paragraph 5, and Exhibit B

-3-

attached thereto (consisting of the credit report itself and a cover letter from a proposed lender to Plaintiff attaching the same and seeking an explanation from Plaintiff). Also, compare the documents constituting Plaintiff's proposed Exhibit 94, a portion of which includes an Equifax communication dated September 5, 1996, showing that Plaintiff's account with Hennepin County "has been deleted", and another portion of which includes a TRW communication dated November 10, 1996, showing that Plaintiff still owed Hennepin County $22,749.00 in past due child support. Based on these examples alone, it is clear there are at least genuine issues of material fact as to the accuracy of Defendants' child support arrearage reporting which also preclude summary judgment in favor of Defendants.

Third, there is at least a genuine issue of material fact as to whether Defendants made an adequate investigation of the alleged child support arrearages due and owing by Plaintiff before doing their reporting to the national credit bureaus. As Defendants acknowledge, Plaintiff first brought suit against Hennepin County in 1998 regarding claimed violations of the Fair Credit Reporting Act. (Defs.' Mem., p. 4). Plaintiff's FCRA claims were dismissed in that suit because, at that time, there was no private cause of action under the FCRA. *Avery v. Greenham and Hennepin County*, 1999 WL 595409 (Minn. App. 1999). Defendants claim that during this litigation and thereafter, they periodically "confirmed that Plaintiff had not paid his arrears and, accordingly, that credit bureau reporting was still warranted." (Defs.' Mem., p. 5). However, there is no evidence that Defendants did anything by way of investigation of the actual arrearages owing other than consult their own inaccurate records (see above). Instead, Defendants admittedly did nothing but confirm Plaintiff's reporting status by stating that "Dr. Avery has pending litigation with Hennepin County disputing the amount of his arrears. Hennepin County maintains the amount is correct pending the outcome of the court hearing and payment update." (Def.'s Mem., p. 5). Given the glaring inaccuracies in Defendants' records of Plaintiff's child support arrearages, as shown in

-4-

Exhibits B and D to the Second Avery Aff., how can there be anything other than a genuine issue of material fact as to the adequacy of Defendants' investigation into the amounts Plaintiff allegedly owed in child support?

In the present suit, as the Court file will reflect, Plaintiff has now made claims against both Hennepin County and the State of Minnesota for violation of the Fair Credit Reporting Act, both on the basis of their status as a "Consumer Reporting Agency" ("CRA") as defined by the Act and on the basis of their status as "furnishers of information" under the Act. While it is true that Magistrate Judge Susan Nelson's Report and Recommendation dated April 9, 2001, found that Hennepin County was not a CRA under the Act and opined that the State of Minnesota was not a CRA either, the Report and Recommendation did not address either Defendant's potential liability as a furnisher of information. As the Court file in this matter reflects, Plaintiff was later allowed to amend his Complaint to add the State of Minnesota as a Defendant and also formally allege liability on the part of both Defendants as furnishers of information under the Act.

## STANDARD OF REVIEW

Defendants Hennepin County and the State of Minnesota have moved the Court for summary judgment pursuant to Fed. R. Civ. P. 56. Under Rule 56, summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In the present case, as discussed above, genuine issues of material fact remain to be resolved at trial, and Defendants are therefore not entitled to judgment as a matter of law. These factual disputes are obviously outcome determinative and therefore Defendants' request for summary judgment must be denied.

## LEGAL ARGUMENT

As Defendants have noted in their Memorandum and Trial Brief, there are also certain legal issues to be ruled upon prior to trial, as set forth below.

### I.    BOTH HENNEPIN COUNTY AND THE STATE OF MINNESOTA ARE CONSUMER REPORTING AGENCIES UNDER THE FAIR CREDIT REPORTING ACT.

Defendants' argument on this issue is essentially as follows: if the information furnished relates only to transactions or experiences between Plaintiff and a Defendant, it does not constitute a consumer report and therefore the Defendant is not a CRA. (Def.'s Mem.,p. 8). Defendants are correct in stating that, under the FCRA, reports containing information relating only to transactions between the consumer and the person making the report are excepted from the definition of "consumer report," see 15 U.S.C. § 1681a(d)(2)(a)(1) (1999), and that a consumer reporting agency is defined as a person that provides consumer reports to third parties, see id. § 1681a(f).

In the present case, however, Defendants did not furnish information relating solely to transactions or experiences between them and Plaintiff. Rather, the reported child support arrearages related to transactions involving Hennepin County, the State of Minnesota, the District of Columbia court that ordered Plaintiff to pay $665 per month in 1990 and found that he owed no arrearages in 1996, the noncustodial parent who received the support, Plaintiff, and arguably even the child on whose behalf the support was paid. Defendant Hennepin County has even admitted in a previous memorandum that its child support collection efforts, and thus the information relating to them, relates not just to the County and Plaintiff. *"[T]he State and County are not collecting child support for themselves,"* Defendant Hennepin County proclaimed in its Memorandum in Support of Motion to Dismiss or for Summary Judgment dated October 23, 2000, on file herein, at p. 4 (emphasis added). Thus, Defendants' reliance on this exception is misplaced. Certainly the State of Minnesota,

being a legal entity separate and distinct from Hennepin County, cannot claim that it was furnishing information solely about the State's experiences with Plaintiff - it was clearly furnishing information about the *County's* (and others) experiences with Plaintiff. Thus the State, at the least, should be found to be a CRA as a matter of law.

Defendants also argue that they do not fit the definition of a CRA because they do not charge for their services in furnishing the child support payment information, nor do they do so voluntarily. The FCRA defines "consumer reporting agency" to include any person that, for money *or* on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling information on consumers for the purpose of furnishing consumer reports to third parties, and that uses interstate commerce for the purpose of preparing or furnishing such reports. 15 U.S.C. § 1681a(f) (1999). The Act defines "consumer report" to include a communication of any information by a CRA bearing on a consumer's credit worthiness, character, reputation or mode of living that is expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit, insurance or employment, subject to certain listed exceptions. *Id*. § 1681a(d).

In attempting to except themselves from this definition of a CRA, Defendants confuse "cooperative" with "voluntary," stating that because the providing of child support information is made mandatory by statute, it is not done on a cooperative basis. To "cooperate" means "[t]o act jointly or concurrently toward a common end." Black's Law Dictionary 302 (5th ed. 1979). A "voluntary" undertaking, on the other hand, is one "[d]one by design or intention, . . . and without coercion." *Id*. at 1412. The fact that Defendants' actions in question here are mandated by statute does not mean that they are not being done cooperatively; in fact, the furnishing of the child support information by the County is a joint act with the State and other information furnishers, as well as credit bureaus, toward the common end of providing and compiling information on consumers' credit worthiness and

-7-

other relevant characteristics. It therefore fits the statutory definition. Defendants' reporting may not be voluntary, but that is irrelevant. The FCRA makes no distinction between reportings that are voluntary and those that are compulsory.

For the above reasons, Plaintiff respectfully requests that the Court reconsider its affirmation of Magistrate Judge Nelson's Report and Recommendation holding neither Hennepin County nor the State of Minnesota to be CRAs under the Fair Credit Reporting Act.

## II. THE FAIR CREDIT REPORTING ACT APPLIES TO BOTH HENNEPIN COUNTY AND THE STATE OF MINNESOTA AS FURNISHERS OF INACCURATE INFORMATION TO THE NATIONAL CREDIT BUREAUS.

Defendant Hennepin County argues that the Fair Credit Reporting Act does not apply to its actions in furnishing information regarding child support arrearages because it furnishes information solely to the State of Minnesota, which the County claims is not a CRA. First, if the Court determines that the State is, in fact, itself a CRA, this argument of the County must fall on this basis alone. However, the County's interpretation of the Act is seriously flawed in other respects as well. The language of the Act itself, and cases interpreting the Act in this context, albeit of limited number, demonstrate that the FCRA applies to Hennepin County.

First, cases decided very recently in other federal courts reinforce the consumer's right to bring a claim based on a violation of § 1681s-2(b). In *DiMezza v. First USA Bank, Inc.*, 103 F. Supp. 2d 1296 (D.N.M. 2000), for instance, the court explained that "the plain language of the Fair Credit Reporting Act compels the conclusion that there is a private right of action for consumers to enforce the investigation and reporting duties imposed on furnishers of information." *Id.* at 1300. That was not always the case, the *DiMezza* court stated; it resulted from the recent amendments to the FCRA:

> The legislative history of the 1996 amendments to the Fair Credit Reporting Act also supports the plain language interpretation and

-8-

demonstrates a legislative purpose to give consumers a right of action against furnishers of information. Before 1996, the Fair Credit Reporting Act did not impose any requirements on those who furnished information to consumer reporting agencies. S. Rep. No. 104-185, at 49 (1995). The 1996 amendment included new provisions imposing duties on the furnishers of information and amended sections 1681n and 1681o from previously imposing liability on only "any consumer reporting agency or user of information" to "any person." See id. at 48; 15 U.S.C. §§ 1681n and 1681o, historical and statutory notes. The changes to the civil liability sections reflected the new broader category of those who may be liable for violations.

*Id.*

In another recent case very similar to the present one, the United States District Court for the Eastern District of Texas considered a consumer's claims against state officials based on their violations of the FCRA, due process and the Fair Debt Collection Practices Act. In *Campbell v. Baldwin*, 90 F. Supp. 2d 754 (E.D. Tex. 2000), as here, the plaintiff was a child support obligor who disputed the amount of child support payments that the defendants were reporting to credit agencies. The plaintiff alleged that the defendants were reporting inaccurate information. *Id.* at 756. The defendants in *Campbell*, as Defendants here, moved the court to dismiss the plaintiff's claims.

The *Campbell* court first noted that "there is no authority supporting the proposition that the FCRA does not create a private right of action for the actions alleged in the complaint." *Id.* Although most of the responsibilities in the Act relate to consumer reporting agencies, there are broader provisions, the court explained, that apply to all furnishers of information. *Id.* And whereas only government officials can initiate an action based wholly on the furnishing of inaccurate information, "the provisions of the FCRA that deal with the proper methods to follow when there is a dispute as to the information provided" give rise to a private right of action by the harmed consumer. *Id.* The state officials in *Campbell* apparently performed inadequate follow-up regarding the disputed child support information,

-9-

thus causing the Court to remark that "[t]his seems to be the type of conduct that Congress was referring to when it enacted 15 U.S.C. § 1681s-2(b). Therefore, the defendants' Motion to Dismiss the FCRA claims . . . is denied." *Id.*

The instant case, too, presents just the type of situation that § 1681s-2 was meant to remedy. Defendants failed to adequately follow up when they became aware that Plaintiff disputed the arrearages, and despite that lack of follow-up they continued to report the erroneous child support information long after they became aware of the dispute and even after Plaintiff first brought suit on this issue.

Second, under the language of the FCRA itself, 15 U.S.C. §§ 1681—1681u (1999), "*[a]ny person* who is **negligent** in failing to comply with *any requirement* [under the Act] with respect to *any consumer* is liable to that consumer" for actual damages, court costs and attorneys' fees. *Id.* § 1681o (emphasis added). In addition, "*[a]ny person* who **willfully** fails to comply with *any requirement* [of the Act] with respect to *any consumer* is liable to that consumer" for actual damages, or damages of not less than $100 nor more than $1000; punitive damages; and the costs and attorneys' fees necessitated by bringing the action to recover such damages. *Id.* § 1681n (emphasis added).

The Act defines "person" to include "any . . . government or governmental subdivision or agency." *Id.* § 1681a(b). "Consumer" is generally defined as "an individual." *Id.* § 1681a(c). There can be no argument that Defendant County is a governmental subdivision and that Plaintiff is an individual. Accordingly, if Defendant County was negligent in failing to comply with any provision of the FCRA, it is liable to Plaintiff for his damages, court costs and attorneys' fees, and if it willfully failed to comply, it may also be subject to punitive damages.

The FCRA sets forth various requirements applicable to consumer reporting agencies and also specific requirements applicable to "furnishers of information." Although this term

-10-

is not defined in the Act, common sense dictates that it would apply to Defendant County in this case. Section 1681s-2 of the FCRA prohibits the reporting of information relating to a consumer if the furnisher "knows or consciously avoids knowing that the information is inaccurate." *Id.* § 1681s-2(a)(1)(A). It further prohibits the reporting of information after notice and confirmation of errors, and it sets forth several affirmative duties applicable to furnishers of information. *Id.* § 1681s-2(a)(1)(B), (a)(2)—(5). Violations of § 1681s-2(a) do not give rise to a private cause of action by the consumer who is the subject of the erroneous information, but rather the State may bring an action on the consumer's behalf. *Id.* §§ 1681s-2(c), (d); 1681s(c)(1)(B).

Subsection (b) of § 1681s-2, however, *does* give rise to a private cause of action by the harmed consumer. That subsection sets forth the duties of furnishers of information upon receiving notice of a dispute:

> After receiving notice pursuant to [§ 1681i(a)(2)][1] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
>
> > (A) conduct an investigation with respect to the disputed information;
> >
> > (B) review all relevant information provided by the consumer reporting agency pursuant to [§ 1681i(a)(2)];
> >
> > (C) report the results of the investigation to the consumer reporting agency; and
> >
> > (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

---

[1] Section 1681i(a)(2) relates to a consumer reporting agency's duty to provide notice of a dispute from a consumer to the person who provided the information in dispute, which was done in the present case.

-11-

*Id.* § 1681s-2(b)(1) (footnote added). Defendant State of Minnesota admits that it is a "furnisher of information" under the Act. (Defs.' Mem., p. 11).

Defendants both claim they have no liability as furnishers of information because they claim they accurately reported Plaintiff's child support arrearages and performed an adequate investigation, as required by the above cited provisions of the Act. As set forth above, there are clearly genuine issues of material fact on these points which preclude summary judgment in favor of Defendants. Therefore, the questions of accurate reporting and adequate investigation cannot be decided as a matter of law, except perhaps in Plaintiff's favor.

In the present case, one of the national consumer reporting agencies, in response to a dispute raised by Plaintiff, sent a Consumer Dispute Verification Form to the State of Minnesota requesting verification of the past-due child support information furnished, originally, by Defendant County. The State forwarded the form to Defendant County, placing on both Defendants the obligation to investigate and follow up pursuant to § 1681s-2(b) of the FCRA. Defendants, rather than conducting an investigation as required by the Act, summarily responded with the statement that "Dr. Avery has pending litigation with Hennepin County disputing the amount of his arrears. Hennepin County maintains the amount is correct pending the outcome of the court hearing and payment update." (Def.'s Mem., p. 5).

Plaintiff submits that Defendants's follow-up action was inadequate under the FCRA as a matter of law. Defendants do not claim to have conducted, and indeed did not conduct, an actual investigation. Thus, Defendants obviously could not report the results of an investigation to the consumer reporting agency. Furthermore, even if Defendants' conduct were deemed to be an investigation, the results of that investigation were, by their own admission, incomplete. *See* Def.'s Mem. at p. 5 (stating that Hennepin County maintained that the arrearage information was correct *"pending the outcome of the court hearing and payment update"*) (emphasis added). Obviously, the figures of Defendant Hennepin County

-12-

were grossly inaccurate when one compares the amount reported ($30,384.09 in arrears pursuant to a child support order dated December 26, 1995, as set forth in Exhibit F to the First Avery Aff.) to the amount actually owing under the December 26, 1995 Order (nothing pursuant to the First Avery Aff. and Exhibits G and H thereto, and only $3,213.00 pursuant to Hennepin County's own records as shown in Exhibit L to the First Heller Aff.) and when one reviews Exhibit B to the Second Avery Aff. The FCRA requires that, when the results of an investigation reveal that the information provided was incomplete, those results must be reported "to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis." 15 U.S.C. § 1681s-2(b)(1)(D) (1999). This, Defendants did not do.

Defendants also attempt to avoid liability on the ground that the State notified Plaintiff in February 1992 of his right to contest the overdue support before it sent the overdue support amounts to other CRAs. (Def.'s Mem., p. 12). Defendants vainly cling to the claim that because Plaintiff allegedly did not contest the overdue amount at that time, he cannot use the FCRA to vindicate his rights in the present suit. This argument makes very little sense. The crux of the matter in this case relates to the fact that Defendants continued to report significant arrearages, *even after they became aware of the 1996 District of Columbia court order reflecting that Plaintiff owed no arrearages*. Whether Plaintiff contested the amount reported in 1992 has no bearing on this case since it is undisputed he has been complaining of Defendants' arrearage reporting since at least 1993. Because of that fact, and the fact that only arrearages owed pursuant to court or administrative orders may be reported, this argument, like all of Defendants' others, should be rejected.

Incredibly, Defendants also attempt to evade responsibility for their violation of the FCRA based upon their erroneous interpretation of the effect of the 1996 Washington, D.C. Order finding that Plaintiff owed no arrearages under the 1993 Washington, D.C. permanent

-13-

support order. Defendants took it upon themselves to conclude that this finding of zero arrearages by the D.C. court was based on the fact that Plaintiff had moved to Maryland, and speculated that Plaintiff must still owe the alleged arrearages under the previous D.C. order, notwithstanding the clear language of this Court Order (Def.'s Mem., p. 13) and notwithstanding the conclusion of the Hennepin County Court that it lacked jurisdiction to challenge the finding of no arrearages by the D.C. Court (Exhibit J to First Heller Aff., pp. 7-8, paragraphs 43 and 46). Defendants also concluded that the D.C. Court "was without the necessary information to issue an order regarding the state of Plaintiff's arrearages in Minnesota." (Defs.' Mem., p. 13). What Defendants are really saying is that the D.C. Court was without the necessary information to issue an order regarding the state of Plaintiff's arrearages based upon its own internal records and its own previous court order establishing the child support obligation in the first place. This is surely a disingenuous argument at best. As set forth above, it certainly does not follow that "[b]ecause the D.C. case was dismissed, the D.C. file would necessarily indicate that Plaintiff had no arrearages on record." (Defs.' Mem., p. 13). A dismissal of a case has no bearing on the fact of whether or not arrearages are in existence.

Based on these erroneous and unjustified conclusions, Defendants continued to report that Plaintiff was over $30,000 in arrears in his child support obligation (First Avery Aff., Exhibit F). There was no court order finding an arrearage under any Minnesota state district court order. Because the only applicable order in this case provided that Plaintiff did not owe past-due child support, the reporting of *any* amount of arrearages, whether from the District of Columbia or Minnesota, was in violation of the Act.

Defendants did not fulfil their obligations as furnishers of information under the FCRA, principally because of their failure to conduct an appropriate investigation, and they are therefore liable to Plaintiff for damages. Their conduct was at best negligent, and at worst

-14-

intentional, in which case they are also liable to Plaintiff for punitive damages. At a very minimum, there is a question of fact as to whether Defendants complied with the requirements placed on furnishers of information under the FCRA, and summary judgment therefore cannot be granted in Defendants' favor.

### III. THE WILLFULNESS OF DEFENDANTS' ACTIONS IN REPORTING FALSE INFORMATION REGARDING PLAINTIFF'S ARREARAGES TO THE NATIONAL CREDIT BUREAUS IS AN ISSUE OF FACT.

Defendants claim the information they reported to the national credit bureaus was accurate. (Defs.' Mem., p. 14). As set forth above, this is demonstrably false. Defendants next assert that they had a good faith belief in the accuracy of their arrearage reporting. Given the fact that Defendants did no more than review their already faulty records and given their specious interpretation of the effect of the 1996 D.C. Order, this assertion cannot stand. In any event, however, whether a party acted willfully or not is certainly an issue of fact to be determined by the jury in this case, not determined as a matter of law, pre-trial, by the Court.

With respect to the comments of the Minnesota Court of Appeals in *Avery v. Greenham and Hennepin County*, 1999 WL 595409 (Minn. App. 1999), relative to Defendant County's bad faith, such comments were mere dicta not binding on this Court. Minnesota courts are obligated to give full faith and credit to the orders from the Washington, D.C. courts, rather than questioning their jurisdiction to decide factual matters relating to their own records and their own court orders. Instead, this Court should take note and concur with the comment made by Judge Patricia Kerr Karasov in the memorandum accompanying her Order of February 2, 1999, shown as Exhibit A to the Affidavit of John B. Waldron dated November 13, 2000, on file in this matter. In that memorandum, Judge Karasov noted that Plaintiff was "unfortunately without remedy under the FCRA" (since there was then no private cause of action thereunder) because Hennepin County "continued to report the child support arrearages from Washington, D.C. in total disregard of the July 5, 1996 Washington, D.C. order. . . ."

-15-

Judge Karasov evidently believed there was clear evidence of willfulness on the part of Hennepin County and the jury in this case should be allowed the opportunity to concur.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be denied in its entirety and, at long last, Plaintiff should be allowed to proceed to trial on his claims. At a minimum, there are genuine issues of material fact that must be decided at trial.

Although there is a good basis for deciding as a matter of law that Defendants are both CRAs, and it is also clear that Defendants are liable to Plaintiff under the FCRA as furnishers of information.

Respectfully submitted,

Dated: July 22, 2002

WALDRON LAW OFFICES, LTD.

By _____
    John B. Waldron, Esq.
    Attorney Registration No. 122671
    1951 Concordia Street
    Wayzata, Minnesota 55391-9320
    (952) 471-0940

    Attorney for Plaintiff William K. Avery

-16-