## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. WILLIAM AVERY, ) | |
| ) | July 5, 2006 |
| Plaintiff, ) | |
| ) | |
| Vs. ) | Civil Action No: 05-01108 GK |
| ) | The Honorable Judge Gladys Kessler |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## INTRODUCTION OF CASE CITATION REGARDING FEDERAL TORT CLAIMS ACT AND IN SUPPORT OF CURRENT ACTION BY PLAINTIFF

Please take notice that Dr. Avery received in email this morning a case as reviewed by an attorney and forwarded to Dr. Avery. Please take notice that on page 1 first paragraph and last sentence that the District Court dismissed the suit in Dolan v. United States Postal Service, however the Supreme Court reversed that decision under the FTCA and ordered in that case, that plaintiffs' claim could go forward and under the Federal Tort Claims Act and waiving sovereign immunity in certain area involving negligence committed by federal employees in the course of their employment and incorporating "negligent transmission".

Respectfully Submitted to the Court,

*A. William Avery*

Dr. William Avery

**RECEIVED**

JUL - 5 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

## CERTIFICATION OF SERVICE

I hereby certify that on this 5 of July, 2006, a copy of the foregoing reply entitled   Introduction of Case Citation Regarding Federal Tort Claims Act and In Support of Current Action by Plaintiff,   was served on defendant by first class mail, postage prepaid, to the following address:

       Fred E. Haynes
       Assistant United States Attorney
       555  4th Street, N.W.
         Room E-4110
       Washington, D.C.  20530
       (202) 514-7201

                 Sincerely,

                 Dr. William Avery

19

(Slip Opinion)          OCTOBER TERM, 2005          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DOLAN *v.* UNITED STATES POSTAL SERVICE ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 04–848.  Argued November 7, 2005—Decided February 22, 2006

Under the Postal Reorganization Act, the Federal Tort Claims Act (FTCA) applies to "tort claims arising out of [Postal Service] activities." 39 U. S. C. §409(c). The FTCA, in turn, waives sovereign immunity in certain cases involving negligence committed by federal employees in the course of their employment, 28 U. S. C. §1346(b)(1), making the United States liable "in the same manner and to the same extent as a private individual under like circumstances," §2674. However, the sovereign immunity bar remains as to, *inter alia,* "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." §2680(b). Consequently, the United States may be liable if postal workers commit torts under local law, but not for claims defined by the exception. Petitioner Dolan filed an FTCA suit against the Postal Service for injuries she suffered when she tripped and fell over mail left on her porch by postal employees. The District Court dismissed the suit, and the Third Circuit affirmed, both concluding that, although the FTCA generally waives sovereign immunity as to federal employees' torts, Dolan's claims were barred by §2680(b)'s exception.

*Held:* Because the postal exception is inapplicable in this case, Dolan's claim may go forward. This Court assumes that under the applicable state law a person injured by tripping over a package or bundle negligently left by a private party would have a cause of action for damages. The question is whether §2860(b)'s exception preserves sovereign immunity in such a case. Considered in isolation, "negligent transmission" could embrace a wide range of acts. However, interpretation of a word or phrase depends upon reading the whole statutory text, considering the statute's purpose and context. Here, both context and precedent require reading the phrase so that it does not

2                    DOLAN *v.* POSTAL SERVICE

Syllabus

go beyond negligence causing mail to be lost or to arrive late, in dam-
aged condition, or at the wrong address. Starting with context, "neg-
ligent transmission" follows the terms "loss" and "miscarriage," which
limit the reach of transmission. Mail is "lost" if it is destroyed or
misplaced and "miscarried" if it goes to the wrong address. Since
both terms refer to failings in the postal obligation to deliver mail in
a timely manner to the right address, it would be odd if "negligent
transmission" swept far more broadly to include injuries caused by
postal employees but involving neither failure to transmit mail nor
damage to its contents. This interpretation is supported by *Kosak* v.
*United States,* 465 U. S. 848, where this Court noted that one of the
FTCA's purposes was to waive the Government's immunity from li-
ability for injuries resulting from auto accidents involving postal
trucks delivering—and thus "transmitting"—the mail. Nothing in
the statutory text supports a distinction between negligent driving,
which the Government claims relates only circumstantially to the
mail, and Dolan's accident, which was caused by the mail itself. In
both cases the postal employee acts negligently while transmitting
mail. In addition, focusing on whether the mail itself caused the in-
jury would yield anomalies, perhaps making liability turn on, *e.g.,*
whether a mail sack was empty or full. It is more likely that Con-
gress intended to retain immunity only for injuries arising because
mail either fails to arrive or arrives late, in damaged condition, or at
the wrong address, since such harms are primarily identified with
the Postal Service's function of transporting mail. The Government
claims that, given the Postal Service's vast operations, Congress
must have intended to insulate delivery-related torts from liability,
but §2680(b)'s specificity indicates otherwise. Had Congress intended
to preserve immunity for all delivery-related torts, it could have used
sweeping language similar to that used in other FTCA exceptions,
*e.g.,* §2860(i). Furthermore, losses of the type for which immunity is
retained under §2680(b) are at least to some degree avoidable or
compensable through postal registration and insurance. The Gov-
ernment raises the specter of frivolous slip-and-fall claims inundating
the Postal Service, but that is a risk shared by any business making
home deliveries. Finally, the general rule that a sovereign immunity
waiver "will be strictly construed . . . in favor of the sovereign," *Lane*
v. *Peña,* 518 U. S. 187, 192, is "unhelpful" in the FTCA context,
where "unduly generous interpretations of the exceptions run the
risk of defeating" the central purpose of the statute, *Kosak, supra,* at
853, n. 9, which "waives the Government's immunity from suit in
sweeping language," *United States* v. *Yellow Cab Co.,* 340 U. S. 543,
547. Pp. 4–11.

377 F. 3d 285, reversed and remanded.

Cite as: 546 U. S. ____ (2006)    3

Syllabus

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, SCALIA, SOUTER, GINSBURG, and BREYER, JJ., joined. THOMAS, J., filed a dissenting opinion. ALITO, J., took no part in the consideration or decision of the case.

Cite as: 546 U. S. ____ (2006)      1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–848

## BARBARA DOLAN, PETITIONER *v.* UNITED STATES POSTAL SERVICE ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[February 22, 2006]

JUSTICE KENNEDY delivered the opinion of the Court.

Each day, according to the Government's submissions here, the United States Postal Service delivers some 660 million pieces of mail to as many as 142 million delivery points. This case involves one such delivery point—petitioner Barbara Dolan's porch—where mail left by postal employees allegedly caused her to trip and fall. Claiming injuries as a result, Dolan filed a claim for administrative relief from the Postal Service. When her claim was denied, she and her husband (whose claim for loss of consortium the Dolans later conceded was barred for failure to exhaust administrative remedies) filed suit in the United States District Court for the Eastern District of Pennsylvania, asserting that the Postal Service's negligent placement of mail at their home subjected the Government to liability under the Federal Tort Claims Act (FTCA), 28 U. S. C. §§1346(b)(1), 2674. The District Court dismissed Dolan's suit, and the Court of Appeals for the Third Circuit affirmed, 377 F. 3d 285 (2004). Both courts concluded that, although the FTCA generally waives sovereign immunity as to federal employees' torts, Dolan's

Opinion of the Court

claims were barred by an exception to that waiver, 28 U. S. C. §2680(b). We disagree and hold that Dolan's suit may proceed.

I

Under the Postal Reorganization Act, 39 U. S. C. §101 *et seq.*, the Postal Service is "an independent establishment of the executive branch of the Government of the United States," §201. Holding a monopoly over carriage of letters, the Postal Service has "significant governmental powers," including the power of eminent domain, the authority to make searches and seizures in the enforcement of laws protecting the mails, the authority to promulgate postal regulations, and, subject to the Secretary of State's supervision, the power to enter international postal agreements. See *Postal Service* v. *Flamingo Industries (USA) Ltd.,* 540 U. S. 736, 741 (2004) (discussing 39 U. S. C. §§101, 401, 407, 601–606). Consistent with this status, the Postal Service enjoys federal sovereign immunity absent a waiver. See *ibid.;* cf. *FDIC* v. *Meyer,* 510 U. S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit").

Although the Postal Reorganization Act generally "waives the immunity of the Postal Service from suit by giving it the power 'to sue and be sued in its official name,'" *Flamingo Industries, supra,* at 741 (quoting 39 U. S. C. §401(1)), the statute also provides that the FTCA "shall apply to tort claims arising out of activities of the Postal Service," §409(c).

The FTCA, in turn, waives sovereign immunity in two different sections of the United States Code. The first confers federal-court jurisdiction in a defined category of cases involving negligence committed by federal employees in the course of their employment. This jurisdictional grant covers:

"claims against the United States, for money dam-

Opinion of the Court

ages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U. S. C. §1346(b)(1).

As to claims falling within this jurisdictional grant, the FTCA, in a second provision, makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances," though not "for interest prior to judgment or for punitive damages." §2674; see generally *United States* v. *Olson*, 546 U. S. ___, ___ (2005) (slip op., at 1).

The FTCA qualifies its waiver of sovereign immunity for certain categories of claims (13 in all). If one of the exceptions applies, the bar of sovereign immunity remains. The 13 categories of exempted claims are set forth in 28 U. S. C. §2680, and the relevant subsection for our purposes, pertaining to postal operations, is §2680(b). It states:

"The provisions of this chapter and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter."

As a consequence, the United States may be liable if postal employees commit torts under local law, but not for claims defined by this exception.

This was the provision relied upon by the District Court and Court of Appeals to dismiss Dolan's suit. The Court of Appeals' decision created a conflict with a decision of the Court of Appeals for the Second Circuit. See *Raila* v. *United States*, 355 F. 3d 118, 121 (CA2 2004). We granted

4          DOLAN *v.* POSTAL SERVICE

Opinion of the Court

certiorari.  544 U. S. ___ (2005).

II

We assume that under the applicable state law a person injured by tripping over a package or bundle of papers negligently left on the porch of a residence by a private party would have a cause of action for damages.  See 28 U. S. C. §§1346(b)(1), 2674.  The question is whether, when mail left by the Postal Service causes the slip and fall, the §2680(b) exception for "loss, miscarriage, or negligent transmission of letters or postal matter" preserves sovereign immunity despite the FTCA's more general statements of waiver.

If considered in isolation, the phrase "negligent transmission" could embrace a wide range of negligent acts committed by the Postal Service in the course of delivering mail, including creation of slip-and-fall hazards from leaving packets and parcels on the porch of a residence. After all, in ordinary meaning and usage, transmission of the mail is not complete until it arrives at the destination. See, *e.g.,* Webster's Third New International Dictionary 2429 (1971) (defining "transmission" as "an act, process, or instance of transmitting" and "transmit" as "to cause to go or be conveyed to another person or place").  In large part this inference—transmission includes delivery—led the District Court and Court of Appeals to rule for the Government.  See 377 F. 3d, at 288; App. to Pet. for Cert. 5a–6a.  The definition of words in isolation, however, is not necessarily controlling in statutory construction.  A word in a statute may or may not extend to the outer limits of its definitional possibilities.  Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.  Here, we conclude both context and precedent require a narrower reading, so that "negligent transmis-

Opinion of the Court

sion" does not go beyond negligence causing mail to be lost
or to arrive late, in damaged condition, or at the wrong
address. See *Raila, supra*, at 121 (holding the postal
exception covers "damages and delay of the postal mate-
rial itself and consequential damages therefrom"). The
phrase does not comprehend all negligence occurring in
the course of mail delivery.

Starting with context, the words "negligent transmis-
sion" in §2680(b) follow two other terms, "loss" and "mis-
carriage." Those terms, we think, limit the reach of
"transmission." "[A] word is known by the company it
keeps"—a rule that "is often wisely applied where a word
is capable of many meanings in order to avoid the giving of
unintended breadth to the Acts of Congress." *Jarecki* v.
*G. D. Searle & Co.,* 367 U. S. 303, 307 (1961); see also *Dole*
v. *Steelworkers,* 494 U. S. 26, 36 (1990) ("[W]ords grouped in
a list should be given related meaning" (internal quotation
marks omitted)). Here, as both parties acknowledge, mail
is "lost" if it is destroyed or misplaced and "miscarried" if
it goes to the wrong address. Since both those terms refer
to failings in the postal obligation to deliver mail in a
timely manner to the right address, it would be odd if
"negligent transmission" swept far more broadly to include
injuries like those alleged here—injuries that happen to be
caused by postal employees but involve neither failure to
transmit mail nor damage to its contents.

Our interpretation would be less secure were it not for a
precedent we deem to have decisive weight here. We refer
to *Kosak* v. *United States,* 465 U. S. 848 (1984). In *Kosak*,
an art collector alleged in an FTCA suit that artworks he
owned were damaged when the United States Customs
Service seized and detained them. *Id.,* at 849–850. The
question was whether the Government retained immunity
based on §2680(c), a provision that has since been
amended but at the time covered:

6                  DOLAN *v.* POSTAL SERVICE

"[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer." *Id.*, at 852, n. 6 (internal quotation marks omitted).

In its opinion concluding the exception did apply and thus that the United States retained sovereign immunity, the Court gave specific consideration to the postal exception. In a part of the opinion central to its holding, the Court contrasted what it called the "generality of §2680(c)" with the "specificity of §2680(b)," *id.*, at 855. The Court observed:

"One of the principal purposes of the Federal Tort Claims Act was to waive the Government's immunity from liability for injuries resulting from auto accidents in which employees of the Postal System were at fault. In order to ensure that §2680(b), which governs torts committed by mailmen, did not have the effect of barring precisely the sort of suit that Congress was most concerned to authorize, the draftsmen of the provision carefully delineated the types of misconduct for which the Government was not assuming financial responsibility—namely, 'the loss, miscarriage, or negligent transmission of letters or postal matter'— thereby excluding, by implication, negligent handling of motor vehicles." *Ibid.*

In the present case neither party suggests *Kosak*'s conclusion regarding negligent operation of postal motor vehicles should be ignored as dictum. In light of *Kosak*'s discussion, we cannot interpret the phrase "negligent transmission" in §2680(b) to cover all negligence in the course of mail delivery. Although postal trucks may well be delivering—and thus transmitting—mail when they collide with other vehicles, *Kosak* indicates the United States, nonetheless, retains no immunity.

Opinion of the Court

Seeking to distinguish postal auto accidents from Dolan's fall, the Government argues that negligent driving relates only circumstantially to the mail, whereas Dolan's accident was caused by the mail itself. Nothing in the statutory text supports this distinction. Quite the contrary, if placing mail so as to create a slip-and-fall risk constitutes "negligent transmission," the same should be true of driving postal trucks in a manner that endangers others on the road. In both cases the postal employee acts negligently while transmitting mail. In addition, as the Second Circuit recognized and as the Government acknowledged at oral argument, focusing on whether the mail itself caused the injury would yield anomalies, perhaps making liability turn on whether a mail sack causing a slip-and-fall was empty or full, or whether a pedestrian sideswiped by a passing truck was hit by the side-view mirror or a dangling parcel. See *Raila,* 355 F. 3d, at 122–123.

We think it more likely that Congress intended to retain immunity, as a general rule, only for injuries arising, directly or consequentially, because mail either fails to arrive at all or arrives late, in damaged condition, or at the wrong address. Illustrative instances of the exception's operation, then, would be personal or financial harms arising from nondelivery or late delivery of sensitive materials or information (*e.g.,* medicines or a mortgage foreclosure notice) or from negligent handling of a mailed parcel (*e.g.,* shattering of shipped china). Such harms, after all, are the sort primarily identified with the Postal Service's function of transporting mail throughout the United States.

Resisting this conclusion, the Government emphasizes the Postal Service's vast operations—the 660 million daily mailings and 142 million delivery points mentioned at the outset. See Brief for Respondents 36. As delivery to mailboxes and doorsteps is essential to this nationwide

8          DOLAN *v.* POSTAL SERVICE

Opinion of the Court

undertaking, Congress must have intended, the Government asserts, to insulate delivery-related torts from liability. If, however, doorstep delivery is essential to the postal enterprise, then driving postal trucks is no less so. And in any event, while it is true "[t]he §2680 exceptions are designed to protect certain important governmental functions and prerogatives from disruption," *Molzof* v. *United States,* 502 U. S. 301, 311 (1992), the specificity of §2680(b), see *Kosak,* 465 U. S., at 855, indicates that Congress did not intend to immunize all postal activities.

Other FTCA exceptions paint with a far broader brush. They cover, for example: "[a]ny claim for damages caused by the fiscal operations of the Treasury or by the regulation of the monetary system," 28 U. S. C. §2680(i); "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war," §2680(j); "[a]ny claim arising in a foreign country," §2680(k); "[a]ny claim arising from the activities of the Tennessee Valley Authority," §2680(*l*), or "the Panama Canal Company," §2680(m); and "[a]ny claim arising from the activities of a Federal land bank, a Federal intermediate credit bank, or a bank for cooperatives," §2680(n). Had Congress intended to preserve immunity for all torts related to postal delivery—torts including hazardous mail placement at customer homes—it could have used similarly sweeping language in §2680(b). By instead "carefully delineat[ing]" just three types of harm (loss, miscarriage, and negligent transmission), see *Kosak, supra,* at 855, Congress expressed the intent to immunize only a subset of postal wrongdoing, not all torts committed in the course of mail delivery.

Further supporting our interpretation, losses of the type for which immunity is retained under §2680(b) are at least to some degree avoidable or compensable through postal registration and insurance. See United States Postal Service, Domestic Mail Manual pt. 609.1.1 (Nov. 10, 2005),

Opinion of the Court

available at http://pe.usps.gov/text/dmm300/609.htm (as visited Jan. 9, 2006, and available in Clerk of Court's case file) (allowing indemnity claims for loss or damage of "insured, collect on delivery (COD), registered with postal insurance, or Express Mail"); 39 CFR §111.1 (2005) (incorporating by reference the Domestic Mail Manual).  The same was true when Congress enacted the FTCA in 1946. See 39 U. S. C. §245 (1940 ed. and Supp. V) (setting rates and conditions for mail insurance); 39 U. S. C. §381 (1946 ed.) ("For the greater security of valuable mail matter the Postmaster General may establish a uniform system of registration, and as a part of such system he may provide rules under which the senders or owners of any registered matter shall be indemnified for loss, rifling, or damage thereof in the mails . . ."). As *Kosak* explains, one purpose of the FTCA exceptions was to avoid "extending the coverage of the Act to suits for which adequate remedies were already available," 465 U. S., at 858—an objective consistent with retaining immunity as to claims of mail damage or delay covered by postal registration and insurance. While the Government suggests other injuries falling outside the FTCA are also subject to administrative relief, even assuming that is true the provision the Government cites permits only discretionary relief, not an automatic remedy like postal insurance. See 39 U. S. C. §2603 (indicating the Postal Service "may adjust and settle" personal-injury and property-damage claims "not cognizable" under the FTCA's administrative relief provision); see also 31 U. S. C. §224c (1940 ed.) (indicating that "[w]hen any damage is done to person or property by or through the operation of the Post Office Department . . . the Postmaster General is invested with power to adjust and settle any claim for such damage when his award for such damage in any case does not exceed $500"); Legislative Reorganization Act of 1946, §424(a), 60 Stat. 846–847 (repealing §224c as to negligence claims cognizable under the FTCA).

Opinion of the Court

The Government raises the specter of frivolous slip-and-fall claims inundating the Postal Service. It is true that, in addition to other considerations we have identified, *Kosak* describes "avoiding exposure of the United States to liability for excessive or fraudulent claims" as a principal aim of the FTCA exceptions, 465 U. S., at 858. Slip-and-fall liability, however, to the extent state tort law imposes it, is a risk shared by any business that makes home deliveries. Given that "negligent transmission," viewed in context and in light of *Kosak*, cannot sweep as broadly as the Government claims, ordinary protections against frivolous litigation must suffice here, just as they do in the case of motor vehicle collisions.

Finally, it should be noted that this case does not implicate the general rule that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign," *Lane* v. *Peña,* 518 U. S. 187, 192 (1996). As *Kosak* explains, this principle is "unhelpful" in the FTCA context, where "unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute," 465 U. S., at 853, n. 9, which "waives the Government's immunity from suit in sweeping language," *United States* v. *Yellow Cab Co.,* 340 U. S. 543, 547 (1951); see also *United States* v. *Nordic Village, Inc.,* 503 U. S. 30, 34 (1992) (observing "[w]e have on occasion narrowly construed exceptions to waivers of sovereign immunity where that was consistent with Congress' clear intent, as in the context of the 'sweeping language' of the [FTCA]" (quoting *Yellow Cab Co., supra,* at 547)). Hence, "the proper objective of a court attempting to construe one of the subsections of 28 U. S. C. §2680 is to identify 'those circumstances which are within the words and reason of the exception'—no less and no more." *Kosak, supra,* at 853, n. 9 (quoting *Dalehite* v. *United States,* 346 U. S. 15, 31 (1953)). Having made that inquiry here, we conclude Dolan's claims fall outside §2680(b).

Opinion of the Court

\*       \*       \*

The postal exception is inapplicable, and Dolan's claim falls within the FTCA's general waiver of federal sovereign immunity. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE ALITO took no part in the consideration or decision of this case.

Cite as: 546 U. S. ____ (2006)          1

THOMAS, J., dissenting

# SUPREME COURT OF THE UNITED STATES

No. 04–848

BARBARA DOLAN, PETITIONER *v.* UNITED STATES
POSTAL SERVICE ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[February 22, 2006]

JUSTICE THOMAS, dissenting.

The Federal Tort Claims Act (FTCA) waives the Government's sovereign immunity for civil suits seeking money damages

> "for injury or loss of property, or personal injury or
> death caused by the negligent or wrongful act or omis
> sion of any employee of the Government while acting
> within the scope of his office or employment, under
> circumstances where the United States, if a private
> person, would be liable to the claimant in accordance
> with the law of the place where the act or omission oc
> curred," 28 U. S. C. §1346(b)(1),

save several exceptions found in §2680. As relevant here,
Congress reserved to the Government its sovereign immunity respecting "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." §2680(b) (postal exception).

Petitioner Barbara Dolan claims to have suffered personal injuries when she tripped over letters, packages, and
periodicals that an employee of the United States Postal
Service (Postal Service) negligently left on her porch.
Today, the Court concludes that Dolan's lawsuit may
proceed because her claim does not fall within the exception. I disagree. Dolan's claim arises out of the Postal

2          DOLAN *v.* POSTAL SERVICE

THOMAS, J., dissenting

Service's "negligent transmission" of mail and is thus
covered by the terms of the postal exception. Even if the
exception is ambiguous, this Court's cases require that
ambiguities as to the scope of the Government's waiver of
immunity be resolved in its favor. Accordingly, I respect-
fully dissent.

I

The text of the postal exception, and every term therein,
should be ascribed its ordinary meaning. See *FDIC* v.
*Meyer*, 510 U. S. 471, 477 (1994) (noting that we interpret
a statutory term in accordance with its ordinary meaning
when that term is not defined in the statute). The term in
controversy here is "negligent transmission." The crux of
my disagreement with the majority is its failure to assign
the term "transmission" its plain meaning. That term is
defined as the "[a]ct, operation, or process, of transmit-
ting." Webster's New International Dictionary 2692 (2d
ed. 1934, as republished 1945). "Transmit" is defined as,
*inter alia*, "[t]o send or transfer from one person or place
to another; to forward by rail, post, wire, etc., . . . [t]o
cause . . . to pass or be conveyed." *Id.*, at 2692–2693.
There is no cause to conclude that Congress was unaware
of the ordinary definition of the terms "transmission" and
"transmit" when it enacted the FTCA and the postal ex-
ception in 1946. Nor is there textual indication that Con-
gress intended to deviate from the ordinary meaning of
these terms.[1] Accordingly, I would interpret the term

---

[1] In fact, this reading is supported by Congress' routine definitional
use of the terms "transmission" and "transmit" in both criminal and
civil postal statutes to refer to the handling, processing, and delivery of
mail to a final destination. See, *e.g.*, Act of Mar. 3, 1845, ch. 43, §6, 5
Stat. 734 (respecting deputy postmasters authorized "to transmit to any
person or place" official letters or packages free of charge); 18 U. S. C.
§§1696(b) and (c) (referring to unlawful "transmission" of letters);
§§1716(b), (c), (d), and (e) (regulating and proscribing "transmission in
the mails" of dangerous items (*e.g.*, medicines) except when the "trans-

THOMAS, J., dissenting

"transmission" consistent, with its ordinary meaning, see *ante*, at 4, and conclude that the postal exception exempts the Government from liability for *any* claim arising out of the negligent delivery of the mail to a Postal Service patron, including Dolan's slip-and-fall claim.

Rejecting the "ordinary meaning and usage" of "negligent transmission," the majority concludes that the term covers only injury arising "directly or consequentially" from "negligence causing mail to be lost or to arrive late, in damaged condition, or at the wrong address." *Ante*, at 5, 7. Thus, in the majority's view, "negligent transmission" covers direct injury to the mail as well as personal injury arising from injury to the mail, but does not cover personal injury that does not arise from damage to the mail. For example, in the majority's view, if a mail carrier negligently drops a mailbox containing glassware on a patron's doorstep, causing the contents to shatter, and the patron later injures himself while attempting to handle the shards of glass, the postal exception would bar a claim for damages for the destroyed item as well as a related claim for personal injury. That view is correct, as far as it goes. However, under the majority's view, if the mail carrier negligently places a heap of mail on a patron's front porch and the patron trips and falls over the mail as he walks out of his front door, his personal injury claim may go forward. There is no basis in the text for the line drawn by the majority. Indeed, the majority's view is at odds with the broad language of the postal exception, which expressly applies to *"[a]ny claim* arising out of . . . negligent transmission of letters or postal matter." §2680(b) (emphasis added).

The majority rationalizes its view by concluding that the terms "loss" and "miscarriage" necessarily limit the term "transmission." *Ante*, at 5. Applying the rule of *noscitur a*

___

mission" is "to," "from," or "between" specified individuals or entities).

THOMAS, J., dissenting

*sociis*—that a word is known by the company it keeps—the majority reasons that because both "loss" and "miscarriage" refer to "failings in the postal obligation to deliver mail in a timely manner to the right address, it would be odd if 'negligent transmission' swept more broadly." *Ibid.* But there is nothing "odd" about interpreting the term "negligent transmission" to encompass more ground than the decidedly narrower terms "loss" and "miscarriage."

The rule of *noscitur a sociis* is intended to prevent ascribing to one word a meaning so expansive that it conflicts with other terms of the provision in a manner that gives "'unintended breadth to an Act of Congress.'" *Gustafson* v. *Alloyd Co.*, 513 U. S. 561, 575 (1995) (quoting *Jarecki* v. *G. D. Searle & Co.*, 367 U. S. 303, 307 (1961)). That rule, however, "does not require [the Court] to construe every term in a series narrowly because of the meaning given to just one of the terms," where, as here, nothing in the text demands a more limited construction. *Gustafson, supra*, at 586 (THOMAS, J., dissenting) (emphasis deleted). Indeed, to read Congress' use of narrow terms in a list as limiting the meaning of broad terms in the same list "would defy common sense; doing so would prevent Congress from giving effect to expansive words in a list whenever they are combined with one word with a more restricted meaning." *Id.*, at 587.

Nor does this Court's opinion in *Kosak* v. *United States,* 465 U. S. 848 (1984), support the majority's narrow construction of the postal exception. In *Kosak*, this Court suggested that the postal exception does not apply to suits arising from the negligent handling of motor vehicles by Postal Service employees. Specifically, the Court stated that:

> "One of the principal purposes of the [FTCA] was to waive the Government's immunity from liability for injuries resulting from *auto accidents* .... In order to

THOMAS, J., dissenting

ensure that §2680(b) . . . did not have the effect of bar-
ring precisely the sort of suit that Congress was most
concerned to authorize, the draftsmen of the provision
carefully delineated the types of misconduct for which
the Government was not assuming financial responsi-
bility—namely, 'the loss, miscarriage, *or* negligent
transmission of letters or postal matter'. . . *Id.*, at 855
(emphasis added).

That observation has no import beyond the recognition
that the postal exception—whatever its scope may be—
was carefully crafted so as not to undermine an undis-
puted principal purpose of the FTCA—to waive the Gov-
ernment's immunity for injuries arising from *auto acci-
dents*. It says nothing further about the acts Congress
intended to capture when enacting the postal exception,
and, thus, is unremarkable for purposes of construing the
exception. [2]

---

[2] In an attempt to reconcile *Kosak* with this case, the majority argues
that "one purpose of the FTCA exceptions was to avoid 'extending
coverage of the Act to suits for which adequate remedies were already
available,' . . . an objective consistent with retaining immunity as to
some claims of mail damage or delay covered by postal registration and
insurance." *Ante*, at 9 (quoting *Kosak*, 465 U. S., at 858). The majority,
however, ignores the fact that, in most cases, such insurance covers
only the sender, not the recipient, in which case recipients have no
means of obtaining compensation for loss or damage to money, gifts,
heirlooms, valuable papers, delayed medicine, or time-sensitive docu-
ments. See United States Postal Service, Mailing Standards of the
United States Postal Service, Domestic Mail Manual, §§609.4.3(f) and
(ae), pp. 1129, 1130 (rev. Jan. 6, 2005). The majority's justification also
fails to take into account the fact that postal patrons cannot insure
against the loss of items of sentimental value. See *id.*, §609.4.3, gener-
ally. With a more accurate depiction of registration and insurance
coverage in hand, the Government's claim that, like injuries arising
from negligent transmission of mail, other injuries outside the reach of
the FTCA are also amenable to administrative relief is not so easily
dismissed. *Ante*, at 9. Specifically, 39 U. S. C. §2603, as the Govern-
ment argues, provides for the settlement of claims, within the discre-

6          DOLAN *v.* POSTAL SERVICE

THOMAS, J., dissenting

Even if *Kosak* does inform the outcome in this case, it does not support the majority's interpretation of "negligent transmission." As discussed above, the majority does not purport to limit the type of negligent *act* that may fall under the postal exception; rather it limits the scope of the exception based on the type of *consequence* that the negligent act causes (damage to the mail, late delivery, etc.) But *Kosak*'s exclusion of the *act* of negligent driving—regardless of whether the *consequence* of that act is damage to the mail or injury to a person—from the scope of the postal exception implies, if anything, that the *Kosak* Court envisioned discrete *acts* as being covered, independently of the nature of their consequences. See 465 U. S., at 855 (excluding "negligent handling of motor vehicles" from the "types of misconduct" for which liability is barred by the postal exception). As such, *Kosak* does not support an interpretation of "negligent transmission" based upon the type of injury that is caused by the Postal Service's negligent handling of the mail.

II

Assuming that the postal exception is ambiguous, as the majority suggests, see *ante*, at 4–5, settled principles governing the interpretation of waivers of sovereign immunity require us to rule in favor of the Government.

A court may only exercise jurisdiction over the Government pursuant to "a clear statement from the United States waiving sovereign immunity . . . together with a claim falling within the terms of the waiver." *United States* v. *White Mountain Apache Tribe*, 537 U. S. 465, 472

---

tion of the United States, for injuries caused by the Postal Service that are not otherwise cognizable, which would include claims like Dolan's. The discretionary nature of such settlements does not alter the fact that §2603 undermines the Court's position that the purported unavailability of administrative recovery for claims such as Dolan's supports its proposed interpretation.

THOMAS, J., dissenting

(2003). "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane* v. *Peña,* 518 U. S. 187, 192 (1996). These settled legal principles apply not only to the interpretation of the scope of the Government's waiver of immunity, but also to the interpretation of the scope of *any* exceptions to that waiver. See *ibid.* (explaining that, consistent with rules of construction respecting waivers of sovereign immunity, ambiguities created by conditions on and qualifications of the waiver must be strictly construed in favor of sovereign immunity).

Thus, the majority is incorrect to conclude that "this case does not implicate the general rule that 'a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Ante,* at 10. As this case clearly illustrates, the Government's amenability to suit can only be ascertained after construing both the waiver of immunity and its exceptions. The well-established rationale for construing a waiver in favor of the sovereign's immunity, thus, applies with equal force to the construction of an exception to that waiver. Accordingly, even if I were to conclude that the majority's interpretation of "negligent transmission" were as plausible as my own, I would still resolve this case in favor of the Government's sovereign immunity as mandated by our canons of construction.[3]

_____

[3] There is no canon of construction that counsels in favor of construing the ambiguity against the Government. Although we have "on occasion narrowly construed exceptions to waivers of sovereign immunity," we have done so in cases where Congress plainly waived the Government's immunity for the particular claim at issue, and the only question before the Court was the permissibility of the form of the suit. *United States* v. *Nordic Village, Inc.,* 503 U. S. 30, 34 (1992) (citing *United States* v. *Yellow Cab Co.,* 340 U. S. 543 (1951), and *United States* v. *Aetna Casualty & Surety Co.,* 338 U. S. 366 (1949)). In cases where, as here, the question whether a particular claim is subject to an exception is disputed, we have construed FTCA exceptions broadly to

8                    DOLAN *v.* POSTAL SERVICE

THOMAS, J., dissenting

\*      \*      \*

For these reasons, I would hold that a tort claim for personal injury arising out of negligent delivery of mail to a postal patron is barred by 28 U. S. C. §2680(b), the postal exception.  Accordingly, I would affirm the judgment of the Court of Appeals.

---

preclude claims for actions Congress intended to except from the FTCA's general waiver of immunity. See *Dalehite* v. *United States*, 346 U. S. 15, 31 (1953); *United States* v. *Orleans*, 425 U. S. 807 (1976); *Kosak* v. *United States*, 465 U. S. 848 (1984).