UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DR. WILLIAM AVERY, | ) | |
| | ) | |
| Plaintiff | ) | October 12, 2006 |
| | ) | |
| Vs. | ) | |
| | ) | Civil Action No: 05-01108 GK |
| United States of America | ) | The Honorable Judge Gladys Kessler |
| | ) | |
| Defendant | ) | |

## UPDATE OF LEGAL SETTLEMENT

I. **AT SETTLEMENT, PLAINTIFF IS TOLD ON OCTOBER 5, 2006 FOR THE FIRST TIME THAT THERE IS NOW A "SECOND JUDGMENT" FOR AN ADDITIONAL $78,000 REGARDING STUDENT LOANS FROM UNIVERSITY OF PITTSBURGH DENTAL SCHOOL AND THAT SAID JUDGMENT IS IN THE STATE OF GEORGIA**

On October 2, 2006, Dr. Avery received an offer to reduce and settle the still incorrect student loan debt of $99,000. The reduction and settlement offer was made to plaintiff as a settlement total of $57,000 and only if Plaintiff would do a one time payment through the refinance of his home. Enclosed, see as attachment 1, the settlement document from Collection Company of America (therein referred to as C.C.A). C.C.A. then referred plaintiff to a mortgage refinance company that it has worked with in the past and named American Home Loans (see attachment 2).

RECEIVED
OCT 13 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Everything was going smoothly. Dr. Avery's credit was checked, his home appraised and found that Plaintiff was eligible for the refinance for which the settlement was scheduled to occur during the first week in October 2006. The Dept of Education was to be paid off with all proceeds from the refinance. Plaintiff wanted no additional cash out of the refinance (see attachment 2, page 2) which was going to raise his monthly mortgage payment significantly.

On October 5, a mortgage settlement company hired by American Home Loans now notified plaintiff and the lender that they had found a judgment in the state of Georgia regarding additional student loans from the same dental school and specifically called HEAL loans. The settlement company wanted verification that Avery had never lived in Georgia. The Dept. of Education checked plaintiff's name and found that it applied to Avery who resides in Washington, D.C., Avery never lived in Georgia.

The phone clerk for the government student loans, in a three-way telephone conference also informed the refinance company and the plaintiff that "he, (plaintiff) knew of this second judgment."
Avery, the plaintiff had never heard of this "second judgment".

Dr Avery asked the phone clerk for proof of judgment, proof of hearing and proof of service regarding such a hearing. The clerk could not provide any such documentation. Avery had consolidated his student loans in 1991 – and he was aware of this. This student loan consolidation done in 1991 was not a judgment.

2

C.C.A. is now completely confused about what has transpired and does not know why they are harassing the plaintiff and in a collection posture regarding loans that the U.S. is being sued over regarding improper balance and credit reporting - which are now before this Court.

Plaintiff informed C.C.A. that they contacted him and started this collection harassment as created by the Dept. of Education – not by the plaintiff. C.C.A. did tell plaintiff that he "is wasting your time suing the United States for anything".

Plaintiff is aware that C.C.A. would lose a large commission if plaintiff were to prevail.

Furthermore, the refinance company, American Home Loans, was now glad to hear of this additional debt and asked plaintiff to pay this additional "judgment" – eager to collect a higher commission from a larger refinance of plaintiff's home.

It was made apparent that neither collection nor refinance companies hired by the defendant, had any genuine concern for the plaintiff, nor the United States, but were more interested in collecting higher commissions and profits for themselves.

Settlement has been stopped and solely by the United States government, now saying that a "second judgment" for student loans now exist against plaintiff for an additional $78,000 (see attachment 3).

## II. PLAINTIFF PREVIOUSLY REFINANCED HIS HOME IN 2005 AND THERE WAS NO "SECOND JUDGMENT"-- THERE HAS NEVER BEEN A " SECOND JUDGMENT"

Avery followed up on this new claim created by defendants at settlement, and was led to a website for the first time called "default docs.com" where plaintiff saw his name and balance for these HEAL loans for the first time. The Dept of Health and Human Services( referred herein as H.H.S.) maintains this website for defaulted HEAL loan borrowers. There is no "second judgment" and plaintiff was surprised to see any balance whatsoever. Plaintiff will expound further on this later in this document.

Furthermore, the source at the Dept. of Education in Georgia could not produce copies of any second judgment , court hearing or even notice of legal service served upon plaintiff for this "second Judgment", but told plaintiff that he knew about it in a consolidation that plaintiff did in 1991. The clerk in Georgia, informed plaintiff and American Home Loans that "he (Dr. Avery) knew about it".

Avery cannot provide the court with a copy of this "second judgment" because defendants could not supply a copy to him. Until today, Avery had never seen nor heard of a second judgment for HEAL loans nor had he ever been served with papers to appear for a second hearing.

## III. PLAINTIFF NOW ASKS DEFENDANTS TO PRODUCE SECOND JUDGMENT AND THE DOLLAR AMOUNT ATTACHED TO THIS PRIOR AND SUPPOSED JUDGMENT

4

Plaintiff now asks the defendants to produce this "second judgment", and the dollar amount attached to it, especially since the government stopped the repayment of loans, which were monies that it was supposed to be trying to receive.

### IV. PLAINTIFF IS TOLD BY ONE BRANCH OF GOVERNMENT TO USE HIS GOOD CREDIT TO REPAY THE DEBT. IRONICALLY and typical, ANOTHER BRACH OF THE GOVERNMENT IMMEDIATELY STOPS THE REFINANCE

See attachment 4, from Diversified Collection Services, a collection company retained by the defendants and indication that they checked into plaintiff's good credit worthiness. This illustrates yet another time that plaintiff tried to pay this balance, and was stopped by further nonsense from the defendants. It is the wrong amount yet again, because the United States doesn't know the correct balance. The "Federal Validation Notice and State Compliance Information" indicated at the bottom of said attachment is clearly flawed and has not been followed as it should be, in pertaining to the plaintiff.

### V. PLAINTIFF'S CREDIT REPORT PROVIDES CLEAR EVIDENCE THAT HE DOES REPAY CORRECT DEBT

Dr. Avery's credit report indicated in attachment 4, is clear evidence that Plaintiff does pays correct debt with no malice created by him towards a creditor. Plaintiff pays his bills correctly, honestly and on time.

Avery agreed to this settlement with the Department of Education to pay yet another incorrect balance to the United States, so that he and his family can leave the area, attend

post graduate school at nearly the age of 50 and to be done with the incorrect and completely destructive actions taken upon Dr. Avery's life, career, family obligations, social security number and financial well being.

Evidence has previously shown that Avery never deserved any of this disparaging treatment and he is being attacked for not letting the defendants walk over him citing the strength of the United States. Plaintiff's case exemplifies the apparent dysfunction and lack of organization by multiple departments of the United States government that are attacking the plaintiff simultaneously. Evidence has shown that it was the defendant who created this hostility and confusion – and against plaintiff who did not deserve it.

## VI. PLAINTIFF HAS FILED LEGAL ACTION AGAINST THE UNITED STATES IN CONNECTION WITH PROSECUTING FAIR CREDIT REPORTING ACT CLAIMS AGAINST THE UNITED STATES and CITING VIOLATIONS of FEDERAL VALIDATION also listed by attachment 4.

Furthermore Plaintiff asked for a copy of the second judgment which now stopped the home refinance and also stopped the payment to C.C.A. and the repayment of student loans.   After checking her data, the Dept of Education cannot find this supposed "second judgment" or bills sent to plaintiff regarding it. Plaintiff knows that they don't exist.

Instead the Dept. of Education is sending the plaintiff a copy of the promissory note(s) regarding these dental schools loans.  Plaintiff already has a copy of these documents and there is no mention of a judgment, hearing or judicial action. This

6

exercise is to show how disorganized the Dept. of Education has been towards the plaintiff's account and inaccurate and reckless record keeping.

The supposed secondary judgment which stopped the payment of the first and only judgment for student loans – cannot now be produced by the defendants. Plaintiff maintains that there never was a "second judgment."

Plaintiff has asked the defendants numerous times as to what is his correct balance and he has yet to receive a correct answer. On October 5, and for the first time in 14 years, plaintiff now is informed that there is an additional $78,000. Please now turn to attachment 5 and see the rules of collection as published at the HEAL/ government website, informing that a borrower is to be told of their balance /invoice EVERY SIX MONTHS. Plaintiff has never heard from these people (HEAL LOANS) since 1994 when he served a copy of the voluntary dismissal upon them. Plaintiff has not received a bill or invoice since 1994 and believed the issue to have been resolved.

Notice that in attachment 5 and under the topic of "Litigation", that defendant is "required to obtain a judgment against the borrower..."
Plaintiff now asks where is that Judgment that he is being penalized for ? Is it in Georgia?

The point to be made here is: after plaintiff received his Voluntary Dismissal of 1994 – plaintiff never heard again from HEAL and certainly not about a court date, litigation nor judgment regarding HEAL loans.

7

Yet on October 9, 2006 – plaintiff learns for the first time that there is now a "second judgment" against him for HEAL loans and is told that the Justice Department has this loan and his file. This was news to the plaintiff and came from a return telephone from a HEAL representative named Linda Redmond whose telephone number obtained from the website is (301) 443-1540.

### VII. PLAINTIFF HAS NOT RECEIVED BILLS NOR INVOICES FROM HEAL SINCE RECEIPT OF VOLUNTARY DISMISSAL IN 1994

Please now return to attachment 5, the website that Dr. Avery learned about on **October 5, 2006** and see the rules for notification of debt. Plaintiff did not know that he was being defamed publicly by his name, career and loan balance. Avery had only known that his complaint was an internal investigation that was sent to credit bureaus and insurance carriers. Again review the rules for notification of debt, repayment of debt and specifically how often notices are to be sent of this debt. Avery does not have these notices – as there has been no communication from HEAL regarding these apparently reinstated HEAL loans since 1994 when plaintiff sent a copy of his voluntary dismissal to HEAL.

Please now look at the bottom of the page and review the actionable damages clearly written as "POST DEFAULT ACTIVITIES" of what defendants do to doctors that it "deems" as being in default (attachment 5). Plaintiff did not know until today that he was on this website or in default on Heal Loans until his review of the website – he has never

8

received a notice. Avery had a voluntary dismissal in 1994 and had stopped receiving any communication from HEAL. A copy of plaintiff's Voluntary Dismissal of 1994 appears as attachment 6, page 2.

The Dept. of Education apparently reinstated HEAL loans and no one informed the plaintiff. HEAL obviously did something without contacting or notifying Dr. Avery. As of this printing, there is no notification as to any "second judgment" for HEAL loans obtained nor sent to Dr. Avery. It should be further noted that with plaintiffs voluntary dismissal of 1994, that HEAL has been charging interest and not telling or notifying the plaintiff – for an additional 12 years. Plaintiff did not borrow $78,000 as posted on the website so it must be some form of interest.

Repayment of $57,000 to the Department of Education has been stopped, not by Dr. Avery - but by the United States government that is supposedly trying to collect the said money that Dr. Avery willingly was trying to pay back – even at the wrong balance – so as to stop the continued destruction of his life and family. With it being an incorrect balance, plaintiff was essentially agreeing to pay a settlement, of which it would be presumed that he was guilty - <u>when he wasn't</u>, - so as to end 18 years of undeserved harassment by the United States and leave the area altogether by closing his office.

No new dental office has come into this community in 16 years and remained. In fact this will be the second dental office that is closing soon. This community already desperately lacking in health care, and with the closing of D.C. General Hospital is

receiving less and less available service because practitioners do not want to come here or accept low income, welfare and Medicaid recipients. For Plaintiff, it has been a documented and unnecessary battle to be here since 1988. Plaintiff did not cause this dispute and is why when younger, both he and his parents sought out schools that offered scholarships, as there was no confidence in the student loan program.

Respectfully Submitted to the Court,

*Dr. William Avery*

Dr. William Avery

Cc: attachment 1: settlement offer from C.C.A. for $57,687

attachment 2: refinance settlement agreement from American Home Loans

attachment 3: plaintiffs name at public website maintained by H.H.S.

attachment 4: Diversified Collection informs plaintiff of his good credit 12/14/04

attachment 5: rules of collection published at HEAL website

attachment 6: voluntary dismissal 1994

## CERTIFICATION OF SERVICE

I certify that on October 13, 2006, a copy of the foregoing document was served on defendant by first class mail, postage prepaid, to the following address:

Fred E. Haynes
Assistant United States Attorney
555 4th Street, N.W.
Room E-4110
Washington, D.C. 20530
(202) 514-7201